FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 FEB 22  AM 11: 28

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CRESCENT CITY BAPTIST CHURCH, ET AL.** | * | CIVIL ACTION |
| **VERSUS** | * | NUMBER 05-2200 |
| **CHURCH MUTUAL INSURANCE CO.** | * | SECTION "L"(3) |

## ORDER AND REASONS

Pending before the Court is the Defendant's Motion for Summary Judgment (Rec. Doc. 9) and the Plaintiff's Cross-Motion for Partial Summary Judgment. For the following reasons, the Defendant's motion is DENIED and the Plaintiff's motion is GRANTED.

### I.    BACKGROUND

In January 2002, Rev. Daniel LeBlanc ("Pastor LeBlanc") became pastor of Crescent City Baptist Church ("CCBC"). For various reasons, problems developed between Pastor LeBlanc and certain members of his congregation. On October 1, 2003, as a result of the deteriorated relationship between Pastor LeBlanc and members of his congregation, the school board of CCBC and fourteen individual petitioners claiming to be members of CCBC filed a Petition for Mandamus, Petition for Declaratory Judgment, Petition for Independent Audit, and Petition for Expenses and Attorney's Fees in Louisiana's Twenty-Fourth Judicial District Court against Pastor LeBlanc as "President, Chairman of the Trustees and current Pastor of Crescent City Baptist Church ("*Muller I*")."[1] Specifically, the petition moved for the following relief: (1) the holding of a general annual business meeting of the CCBC with maximum notice to all members;

---

[1] *Muller, et al. v. Leblanc*, No. 599-500 (La. 24th J.D.C. filed Oct. 1, 2003).

Fee_____
Process_____
X  Dktd_____
__ CtRmDep_____
__ Doc. No._____

(2) the production of and unfettered access to all financial records and reports of the CCBC; (3) the reinstatement of the names of all persons removed from the CCBC's membership rolls; (4) the declaration of nullity as to all board of trustee actions in which Ronnie Fraisse and Juan Rodriguez voted and to all acts in which Pastor LeBlanc had a pecuniary interest and still voted thereon; (5) the reinstatement of Glen Muller as a trustee; (6) the qualification of Ricky Reynolds as a candidate for trustee; (7) the eligibility of all members of the CCBC to vote; (8) the commissioning of an independent audit; (9) a judgment casting Pastor LeBlanc liable for attorney's fees and expenses associated with this lawsuit; and (10) the granting of all other just and equitable relief. Additionally, on October 1, 2003, three of the petitioners in *Muller I* filed a Petition to Revoke Donations in Louisiana's Twenty-Fourth Judicial District Court against CCBC ("*Zito*").[2]

On November 7, 2003, the parties in *Muller I* and *Zito* entered into a Consent Judgment, which was recited in open court and signed on November 13, 2003. Pursuant to the Consent Judgment, the petitioners agreed to file and did file motions to dismiss *Muller I* and *Zito* and to arbitrate the issues raised in the lawsuit. The arbitration process was commenced soon thereafter.

On January 28, 2004, CCBC applied for an endorsement to its current insurance policy with Church Mutual Insurance Company ("CMIC") to provide Directors, Officers, and Trustees Liability ("D & O") coverage. In response to the application, CMIC agreed to and did add D & O coverage to CCBC's existing policy. The endorsement had an effective date of February 4, 2004, and specifically stated that "directors, officer & trustees liability coverage does not apply to

---

[2] *Zito, et al. v. Crescent City Baptist Church*, 599-498 (La. 24th J.D.C. filed Oct. 1, 2003).

injury that arises out of a 'wrongful act' which occurs before the retroactive date," which was specified as February 1, 2004. The D & O policy provides coverage for liability arising out of the errors, neglect, breach of duty, acts or omissions of the directors, officers, and trustees of CCBC. In addition, CMIC has a duty to defend and reimburse CCBC for attorney's fees and expenses to investigate and/or defend against liability covered under the policy.

On March 29, 2004, a letter was sent by counsel for thirty-five individuals, who were alleged members of CCBC or parents of students at CCBC, to four then current or former trustees of CCBC—Dr. Carlos Ramirez, Ron Fraisse, James Elgin, and Dr. Jeff Karas—questioning the acts or omissions of the four trustees, including their response and continued response to the issues raised and demands made in the demand letter. Essentially, the letter provided the four trustees with a rundown of Louisiana's business corporation law, explicit examples of how the four trustees had violated and were continuing to violate Louisiana's business corporation law, and specific demands as to how the four trustees must rectify their violations. Specifically, the letter provided the following demands: (1) the immediate termination of Pastor LeBlanc, Assistant Pastor Chad Perry, and any staff hired by either of them; (2) the immediate repayment by Pastor LeBlanc of the $50,000 loan made to him by the CCBC; (3) the immediate repayment by Pastor LeBlanc of all legal fees and related expenses paid from CCBC funds in connection with his personal legal defense of the litigation pending against him; (4) the prompt restoration and publication of the full, correct membership roster; (5) the preparation of a full and complete listing of CCBC's financial records and its full availability to all members; (6) the calling of a special meeting for the election of trustees before April 30, 2004, with proper written notice to all members entitled to vote; (7) the holding of the special

meeting to elect the trustees and to provide a forum for discussion by the members of the CCBC's administration and financial condition; (8) the commissioning of a full, independent, and objective audit of all CCBC's finances by an external, professional accounting firm; and (9) the reconstitution of the former and the public confirmation of the continued employment of Jerry Riggs as the school principal.

On April 5, 2004, pursuant to its insurance policy, CCBC provided oral notice of the demand letter to CMIC. On the following day, CCBC provided written notice of the demand letter to CMIC. On April 9, 2004, without hearing back from CMIC, the four trustees responded to the Demand Letter, denying that the claimants were entitled to any of the relief sought.

On May 4, 2004, forty-seven petitioners alleging to be members of CCBC filed a Petition for Writ of Mandamus and Rule to Show Cause in Louisiana's Twenty-Fourth Judicial District Court against CCBC through its trustees, including Pastor LeBlanc, Dr. Ramirez, Mr. Elgin, and Mr. Fraisse ("*Muller II*").[3] Twelve of the forty-seven petitioners in *Muller II* had participated in *Muller I*. Furthermore, three of the four defendants in *Muller II* had not been named as defendants in *Muller I*. In the petition, the following relief was claimed: (1) the publication in full by July 15, 2004, of all corporate by-laws, amendments to the articles of incorporation, and/or decisions of the board of trustees; (2) the convening of a full special membership meeting not later than July 15, 2004, to consider the adoption, modification, or repeal of any by-laws and/or amendments to the articles of incorporation; and (3) the creation of a committee of independent Baptists to oversee and supervise the certification of membership and the

---

[3] *Muller, et al. v. Crescent City Baptist Church*, 607-123 (La. 24th J.D.C. filed May 4, 2004).

4

administration of the special business meeting and the annual meeting.

On May 7, 2004, in response to *Muller II*, CCBC provided written notice to CMIC of the *Muller II* petition. On May 17, 2004, CMIC responded in writing denying coverage under the policy. CMIC took the position that all of alleged wrongful acts contained in the *Muller II* petition occurred prior to February 1, 2004 and, thus, were excluded under from D & O Coverage.

After CMIC's denial of coverage, CCBC continued to defend itself against the claims asserted in *Muller II*. On June 4, 2004, due to substantial overlap between the claims asserted in *Muller I*, *Zito*, and *Muller II*, the *Muller II* court stayed that lawsuit and refereed all matters to the existing arbitration proceeding. From July 12 through Jule 15, 2004, the parties argued their case in the arbitration proceeding. On August 1, 2004, the arbitrator resolved all the issues presented in *Muller I*, *Zito*, and *Muller II*.

On June 9, 2005, CCBC, Pastor LeBlanc, Dr. Ramirez, Mr. Elgin, and Mr. Fraisse filed the present lawsuit against CMIC, seeking to recover the costs and expenses incurred in defending the claims asserted in *Muller II* and the March 29, 2004 demand letter, together with penalties for bad faith under Louisiana law. Essentially, CCBC claims that CMIC failed to satisfy its duty to defend and indemnify under the D & O Coverage.

## II.   PRESENT MOTIONS

In its motion for summary judgment, CMIC argues that it had no duty to defend or indemnify CCBC for the claims asserted in *Muller II* or the March 29, 2004 demand letter. First, as to the demand letter, CMIC argues that this letter is not a "suit" as defined in the D & O policy. Second, CMIC contends that all of the asserted claims arose out of wrongful acts that

occurred prior to February 1, 2004, because all of the actions that occurred subsequent to February 1st were continuing wrongful acts whose date of commission/omission must relate back to when the behavior first began. Lastly, CMIC asserts that the D & O policy only covers claims for monetary relief, not injunctive relief. Thus, for these three reasons, CMIC contends that its duty to defend or indemnify under the D & O policy never arose. On the other hand, in its cross-motion for partial summary judgment, CCBC takes the exact opposite position. CCBC argues that the demand letter is a "suit," that the claims asserted in *Muller II* and the demand letter did arise from events subsequent to February 1, 2004, and that the D & O policy covers claims for both monetary and injunctive relief.

### III.   LAW AND ANALYSIS

Under Louisiana law, the duty to defend an insurance policy is generally broader than the scope of the duty to provide coverage. *Coleman v. Sch. Bd. of Richland Parish*, 418 F.3d 511, 523 (5th Cir. 2005); *Suire v. Lafayette City-Parish Consolidates Gov't*, 04-1459, at 18 (La. 4/12/05), 907 So. 2d 37, 51-52; *Steptore v. Masco Constr. Co.*, 03-2064, at (La. 8/18/94), 643 So. 2d 1213, 1218. In determining if the duty to defend has arisen, the court must review the well-pleaded allegations of the plaintiff's complaint. *Suire*, 907 So. 2d at 52. Unless unambiguous exclusion of all the plaintiff's claims is shown, the duty to defend arises. *Meloy v. Conoco*, 504 So. 2d 833, 838 (La. 1987). Therefore, the duty to defend is not dependent upon the ultimate outcome of the lawsuit, but is triggered when there is even a possibility of liability under the insurance policy. *Id.*

Furthermore, even though numerous claims may be alleged for which coverage is excluded under an insurance policy, the duty to defend arises as long as there is a single

allegation under which coverage is not unambiguously excluded. *Long v. Asten, Inc.*, 04-1665, at 10 (La. App. 4th Cir. 3/30/05), 900 So. 2d 1031, 1038, *rev'd on other grounds* 05-1119 (La. 1/13/06), ___ So. 2d ___, 2006 WL 92880. In determining whether a complaint sets forth grounds which bring the claim within the scope of the insurer's duty to defend the suit, the allegations must be liberally construed. *Yount v. Maisano*, 627 So. 2d 148, 153 (La. 1993).

Otherwise, an insurance policy is an agreement between the parties and should be interpreted using ordinary contract principles. *Reynolds v. Select Props., Ltd.*, 93-1480 (La. 4/11/94), 634 So. 2d 1180, 1183. Therefore, when the words of the policy are clear, unambiguously express the intent of the parties, and lead to no absurd consequences, the contract must be enforced as written. *Central La. Elec. Co. v. Westinghouse Elec. Corp.*, 579 So. 2d 981, 985 (La. 1991). If, however, the words of the policy are ambiguous, the ambiguous provision is to be construed against the drafter and in favor of the insured. *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-911 (La. 1/14/94), 630 So. 2d 759, 763-64. In addition, the insurer has the burden of showing that a loss falls within a policy exclusion. *La. Maint. Servs., Inc. v. Certain Underwriters at Lloyd's of London*, 616 So. 2d 1250, 1252 (La. 1993). Moreover, the interpretation of an insurance contract is typically a question of law that can be properly resolved in a motion for summary judgment. *Ind. Fire Ins. Co. v. Sunbeam Corp.*, 99-2182, 99-2257, (La. 2/29/00), 755 So. 2d 226, 230.

Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits show that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. When considering a motion for summary judgment, the Court must "review the facts

drawing all inferences most favorable to the party opposing the motion." *General Universal Systems, Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir. 2004). If the party moving for summary judgment demonstrates the absence of a genuine issue of material fact "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

### A.   Demand Letter

Under section A(1)(d) of the D & O policy, CMIC has "the right and duty to defend [CCBC] against any 'suit' seeking payment for 'loss' and to pay for the 'defense expense.'" Under section H(12), "suit" is defined as:

> a civil proceeding in which a 'loss' because of injury to which this insurance applies is alleged. 'Suit' includes:
>
> a.   An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or
>
> b.   Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

Under the unambiguous terms of the D & O policy, a demand letter is not a "suit." "Suit" requires the existence of a civil proceeding, a forced or consented to arbitration, or a consented to alternative dispute resolution proceeding. A demand letter does not remotely constitute any of these. As a result, even if the March 29, 2004 demand letter asserted demand for monetary relief, it still would not trigger the duty to defend or indemnify because it is not a "suit."

### B.   Wrongful Acts Prior to February 1, 2004

Under section A(1)(a) of the D & O policy, CMIC is obligated "to pay for 'loss' arising from any claim or claims because of injury arising out of a 'wrongful act' to which this insurance

applies." As previously stated and agreed upon by the parties, this policy only applies to wrongful acts that occur after February 1, 2004. Under section H(13), "wrongful act" is defined broadly as: "Any actual or alleged . . . act or omission in the discharge of [a Directors, Officers or Trustees's] duties for [CCBC] as a Director, Officer or Trustee" or "[a]ny other matter claimed against your 'Directors, Officers or Trustees' solely by reason of their being your 'Directors, Officers or Trustees.'"" As a result, if the claims asserted in *Muller II* do not arise out of wrongful acts occurring prior to February 1, 2004, the Court can end its inquiry and grant summary judgment in favor of CMIC.

In the present case, the plaintiffs in *Muller II* asserted a host of wrongful acts against CCBC.[4] The majority of them occurred prior to February 1, 2004 and, as such, are not covered under the D & O policy. Only one act, however, needs to occur retroactive to February 1, 2004, to trigger the duty to defend. *Long*, 900 So. 2d at 1038.

---

[4] After *Muller II* was referred to the pending arbitration proceeding, the plaintiffs alleged certain distinct wrongful acts, such as the June 2004 adoption of new corporate by-laws and a new membership list. The Court finds that these actions are wrongful acts occurring after February 1, 2004. CCBC, however, failed to notify CMIC of these new allegations as required by section F(2). As such, these wrongful acts did not trigger CMIC's duty to defend or indemnify.
  In opposition, CCBC claims that it would have been vain and useless to notify CMIC, the law does not require parties to do a vain and useless acts, and, thus, it was not required to notify CMIC after CMIC's earlier denial of coverage. *Terra Res. v. Lake Charles Dredging & Towing, Inc.*, 555 F. Supp. 406, 407 (W.D. La. 1981). The Court does not find that CCBC's notification of CMIC would have been a vain and useless act. CMIC denied CCBC's claim based solely on the *Muller II* petition, which only asserted claims for injunctive relief arguably occurring before February 1, 2004. In the arbitration, the plaintiffs asserted claims for relief that occurred after February 1, 2004. So, the Court does not find that it would have been vain and useless for CCBC to notify CMIC of the claims asserted in the arbitration.
  Furthermore, there is room for debate as to whether the referral of *Muller II* to arbitration constituted a "suit" under the D & O policy. The Court, however, will not resolve this issue as it is unnecessary to the resolution of these motions.

9

In the March 29, 2004 demand letter, the counsel for the thirty-five individuals informed the four trustees of CCBC of their alleged corporate violations and demanded that they rectify their actions by taking certain enumerated steps. This demand letter and the underlying wrongs alleged therein were referenced in the *Muller II* petition. CCBC takes the position that its failure to acquiesce to these demands constituted wrongful acts occurring after February 1, 2004. Conversely, CMIC contends that these wrongful acts occurred prior to February 1, 2004, because they are continuing wrongs.

Initially, the Court must determine if a wrongful act can be considered a continuing wrongful act under the D & O policy. The plain language of the policy defines a "wrongful act" as "any actual or alleged . . . act or omission." The policy makes no mention of continuing wrongful acts or any implied reference to the possibility of recognizing continuing wrongful acts. Under the plain language of the policy, as long as any actual or alleged act or omission by a trustee or officer occurred after February 1, 2004, such wrongful act would be covered by the policy. In this case, there are several alleged acts and omissions by trustees occurring after February 1, 2004, such as the affirmative refusal to comply with the March 29th demand letter and the omitted rectification of its corporate behavior.

Moreover, in section H(13), the policy states: "Claims arising out of the same 'wrongful act' or interrelated 'wrongful acts' of one or more of your 'Directors, Officers or Trustees' shall be considered one loss and shall be subject to only one retention." This language reflects that CMIC knows how to draft language covering "interrelated" or continuing acts for some purposes. Under the D & O policy, CMIC chose to lump "interrelated" wrongful acts together as one "loss." CMIC, however, did not choose to lump "interrelated" or continuing wrongful acts

together as one "wrongful act." Therefore, the Court finds that the immensely broad language used in the policy unambiguously means that continuing wrongful acts are not considered within the meaning of "wrongful act."

Furthermore, if this language was ambiguous, under the rule of strict construction, the Court would have to construe the D & O policy in favor of the insured. Therefore, the Court would have to find that the D & O policy does not recognize continuing wrongful acts and, as such, each wrongful act is a separate and distinct act.

Even assuming that continuing wrongful acts were recognized by the D & O policy, the Court would still find that CCBC committed separate and distinct wrongful acts after February 1, 2004. The failure of CCBC to rectify its corporate behavior after receiving the March 29, 2004 demand letter was a separate and distinct wrongful act that occurred after February 1, 2004. CCBC's alleged corporate duties and corresponding violations were succinctly and thoroughly made known to it in the demand letter. In response, by way of a April 9, 2004 letter, CCBC affirmatively refused to comply with the demands made upon it. Furthermore, after the letter, CCBC omitted to rectify any of its corporate behavior. While CCBC's motivation and rationale for its post-February 1st acts may have been the same as for its pre-February 1st acts, its decision to affirmatively refuse the demands made in the March 29th letter and its failure to correct its corporate practices after the March 29th letter are new decisions and, as such, new wrongful acts. Accordingly, even if continuing wrongful acts were recognized by the D & O policy, the Court would find that CCBC's April 9th letter affirmatively rejecting all demands and its omitting to reform its corporate behavior were separate and distinct wrongful acts occurring after February 1, 2004.

### C.  Injunctive Relief

CMIC contends that its duty to defend or indemnify under the D & O policy only arises if there is a suit seeking monetary damages. Under section A(1)(d), CMIC has the "right and duty to defend the insured against any 'suit' seeking payment for 'loss' and to pay for the 'defense expenses.'" Under section H(6), "loss" is defined as "damages, judgments, settlements, and 'defense expenses.'" Under section H(4), "defense expenses" covers attorney's fees, paralegal's fees, and any other litigation expenses. Based on these sections, CMIC asserts that its duty to defend or indemnify only arises when a suit seeks payment for "damages, judgments, settlements, and 'defense expenses.'" Since none of the claims against CCBC sought any type of payment and only sought injunctive relief, CMIC asserts that its duty to defend or indemnify was not triggered.

Contrarily, CCBC asserts that CMIC's has the duty to defend or indemnify it for litigation expenses regardless of whether monetary relief or injunctive relief is sought. Under section A(1)(a), CMIC is obligated to pay CCBC "those sums that any of your 'Directors, Officers or Trustees' become legally obligated to pay for 'loss' arising from any claim or claims because of injury arising out of a 'wrongful act' to which this insurance applies." In addition, under section A(1)(c), CMIC is obligated to pay CCBC "those sums that [CCBC] become[s] legally obligated to pay for 'loss' arising from any claim or claims because of injury arising out of a 'wrongful act' to which this insurance applies." Based on these sections, CCBC argues that since it, its pastor, and three of its trustees became legally obligated to pay for attorney's fees, paralegal's fees, and other litigation expenses in hiring independent counsel to defend itself from the *Muller II* claims which arose from post-February 1, 2004 wrongful acts, CMIC has the duty to defend or

indemnify it for such expenses.

Essentially, CMIC argues that section A(1)(d), the duty to defend subsection, is the only section that applies to CCBC's claim and, as such, does not obligate CMIC to pay for any of CCBC's litigation expenses. CCBC, however, argues that sections A(1)(a) and A(1)(c), the duty to indemnify subsections, do obligate CMIC to indemnify it for its litigation expenses. Each party is approaching this litigation from a different angle. CMIC's angle is that its duty to defend has not arisen and, thus, it has no obligation to CMIC. CCBC's angle is that CMIC's duty to indemnify it for its litigation expenses in defending *Muller II* has arisen. In this case, the Court finds that both parties are correct.

Under the D & O policy, CMIC's duty to defend only arises when there is a suit seeking payment for "loss." The operative word being "payment." In *Muller II*, the plaintiffs were not seeking payment for loss. They were purely seeking injunctive relief. Although this injunctive relief may have caused CCBC to suffer collateral loss in the form of compliance fees and attorney's fees, the duty to defend did not arise because the payment for loss must be the relief specifically sought in the litigation, not a by-product thereof.

On the other hand, CMIC's duty to indemnify CCBC arises whenever CCBC becomes obligated to pay for loss. There is a significant difference in the policy language concerning CMIC's duty to defend and duty to indemnify. The duty to defend requires a suit seeking payment for loss. The duty to indemnify only requires the legal obligation to pay for loss. In hiring attorneys to defend itself, CCBC did become legally obligated to pay for loss ("defense expenses") which arose from injuries arising from post-February 1, 2004 wrongful acts. As such, CMIC does have a duty to indemnify CCBC.

The Court acknowledges that there is some ambiguity in the relationship between sections A(1)(a) and (c) and section A(1)(d). Normally, the duty to indemnify section would cover instances in which an insurer is obligated to defend the insured itself or, as in this case, to pay for the litigation expenses. It is an odd situation when an insurer has no duty to defend the insured itself, but must indemnify the insured for expenses paid to independent attorneys hired to defend the insured. This is a situation where the insurer must pay someone else to do what it has no obligation to do itself. Notwithstanding this result, the Court finds that the language of the D & O policy is ambiguous and, thus, must be construed in favor of the insured. As such, although an odd result may occur, it is a result mandated by law. *See Church Mutual Ins. Co. v. The Executive Bd. of the Missouri Baptist Convention*, No. 03-4224, 2005 WL 1532948, at *7-10 (W.D. Mo. June 24, 2005) (interpreting a similar insurance policy and finding that insurer's duty to defend/indemnify did arise).

## IV.   CONCLUSION

For the foregoing reasons, IT IS ORDERED that the Defendant's Motion for Summary Judgment is DENIED and the Plaintiff's Cross-Motion for Partial Summary Judgement is GRANTED.

New Orleans, Louisiana, this 10th day of February, 2006.

UNITED STATES DISTRICT JUDGE

14