**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **CRESCENT CITY BAPTIST CHURCH, ET AL.** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NUMBER: 05-2200** |
| **CHURCH MUTUAL INSURANCE CO.** | * | **SECTION "L"(3)** |

**FINDINGS OF FACT & CONCLUSIONS OF LAW**

This matter came before the Court for a bench trial on October 2, 2006. The Court will trace the history of this dispute one last time before proceeding to its findings of fact and conclusions of law.

**I.   PROCEDURAL HISTORY**

In January 2002, Rev. Daniel LeBlanc ("Pastor LeBlanc") became pastor of Crescent City Baptist Church ("CCBC").[1] On October 1, 2003, as a result of the deteriorating relationship between Pastor LeBlanc and members of his congregation, the school board of CCBC and fourteen individual petitioners claiming to be members of CCBC filed a Petition for Mandamus, Petition for Declaratory Judgment, Petition for Independent Audit, and Petition for Expenses and Attorney's Fees in Louisiana's Twenty-Fourth Judicial District Court against Pastor LeBlanc as "President, Chairman of the Trustees and current Pastor of Crescent City Baptist Church" ("*Muller I*").[2] Specifically, the petition moved for the following relief: (1) the holding of a

---

[1] CCBC merged into Celebration Church, Inc. on August 16, 2005. For the sake of simplicity, however, the Court will continue to refer to the church as CCBC, despite the merger.

[2] *Muller, et al. v. Leblanc*, No. 599-500 (La. 24th J.D.C. filed Oct. 1, 2003).

1

general annual business meeting of the CCBC with maximum notice to all members; (2) the production of and unfettered access to all financial records and reports of the CCBC; (3) the reinstatement of the names of all persons removed from the CCBC's membership rolls; (4) the declaration of nullity as to all board of trustee actions in which Ronnie Fraisse and Juan Rodriguez voted and to all acts in which Pastor LeBlanc had a pecuniary interest and still voted thereon; (5) the reinstatement of Glen Muller as a trustee; (6) the qualification of Ricky Reynolds as a candidate for trustee; (7) the eligibility of all members of the CCBC to vote; (8) the commissioning of an independent audit; (9) a judgment casting Pastor LeBlanc liable for attorney's fees and expenses associated with this lawsuit; and (10) the granting of all other just and equitable relief.  Additionally, on October 1, 2003, three of the petitioners in *Muller I* filed a Petition to Revoke Donations in Louisiana's Twenty-Fourth Judicial District Court against CCBC ("*Zito*").[3]

On November 7, 2003, the parties in *Muller I* and *Zito* entered into a Consent Judgment, which was recited in open court and signed on November 13, 2003.  Pursuant to the Consent Judgment, the petitioners filed motions to dismiss *Muller I* and *Zito* and agreed to arbitrate the issues raised in the lawsuits.  The arbitration process was commenced soon thereafter.

On January 28, 2004, CCBC applied for an endorsement to its current insurance policy with Church Mutual Insurance Company ("CMIC") to provide Directors, Officers, and Trustees Liability ("D & O") coverage.  CMIC agreed to add D & O coverage to CCBC's existing policy.  The endorsement had an effective date of February 4, 2004, and specifically stated that

---

[3] *Zito, et al. v. Crescent City Baptist Church*, 599-498 (La. 24th J.D.C. filed Oct. 1, 2003).

"directors, officer & trustees liability coverage does not apply to injury that arises out of a 'wrongful act' which occurs before the retroactive date," which was specified as February 1, 2004.  The D & O policy provides coverage for liability arising out of the errors, neglect, breach of duty, acts, or omissions of the directors, officers, and trustees of CCBC.  In addition, CMIC has a duty to defend and reimburse CCBC for attorney's fees and expenses to investigate and/or defend against liability covered under the policy.  *See* Pls.' Ex. 2.

On March 29, 2004, a letter was sent by counsel for thirty-five individuals, who were alleged members of CCBC or parents of students at CCBC, to four then-current or former trustees of CCBC—Dr. Carlos Ramirez, Ron Fraisse, James Elgin, and Dr. Jeff Karas—questioning various acts or omissions of the four trustees.  *See* Pls.' Ex. 3.  Essentially, the letter provided the four trustees with a rundown of Louisiana's business corporation law, explicit examples of how the four trustees had violated and were continuing to violate Louisiana's business corporation law, and specific demands as to how the four trustees must rectify their violations.  Specifically, the letter made the following demands:  (1) the immediate termination of Pastor LeBlanc, Assistant Pastor Chad Perry, and any staff hired by either of them; (2) the immediate repayment by Pastor LeBlanc of the $50,000 loan made to him by the CCBC; (3) the immediate repayment by Pastor LeBlanc of all legal fees and related expenses paid from CCBC funds in connection with his personal legal defense of the litigation pending against him; (4) the prompt restoration and publication of the full, correct membership roster; (5) the preparation of a full and complete listing of CCBC's financial records and its full availability to all members; (6) the calling of a special meeting for the election of trustees before April 30, 2004, with proper written notice to all members entitled to vote; (7) the holding of the special meeting to elect the

trustees and to provide a forum for discussion by the members of the CCBC's administration and financial condition; (8) the commissioning of a full, independent, and objective audit of all CCBC finances by an external, professional accounting firm; and (9) the reconstitution of the former and the public confirmation of the continued employment of Jerry Riggs as the school principal.

On April 5, 2004, pursuant to its insurance policy, CCBC provided oral notice of the demand letter to CMIC. On the following day, CCBC provided written notice of the demand letter to CMIC. *See* Pls.' Ex. 3. On April 9, 2004, without hearing back from CMIC, the four trustees responded to the demand letter, denying that the claimants were entitled to any of the relief sought.

On May 4, 2004, forty-seven petitioners alleging to be members of CCBC filed a Petition for Writ of Mandamus and Rule to Show Cause in Louisiana's Twenty-Fourth Judicial District Court against CCBC through its trustees, including Pastor LeBlanc, Dr. Ramirez, Mr. Elgin, and Mr. Fraisse ("*Muller II*").[4] Only twelve of the forty-seven petitioners in *Muller II* had participated in *Muller I*. Furthermore, only one defendant in *Muller II*, Pastor LeBlanc, had been named as a defendant in *Muller I*. The petitioners in *Muller II* were represented by different counsel than the parties in *Muller I* and *Zito*. In the petition, the following relief was sought: (1) the publication in full by July 15, 2004, of all corporate by-laws, amendments to the articles of incorporation, and/or decisions of the board of trustees; (2) the convening of a full special membership meeting not later than July 15, 2004, to consider the adoption, modification, or

---

[4] *Muller, et al. v. Crescent City Baptist Church*, 607-123 (La. 24th J.D.C. filed May 4, 2004).

repeal of any by-laws and/or amendments to the articles of incorporation; and (3) the creation of a committee of independent Baptists to oversee and supervise the certification of membership and the administration of the special business meeting and the annual meeting.

On May 7, 2004, CCBC provided written notice to CMIC of the *Muller II* petition. *See* Pls.' Ex. 4. On May 17, 2004, CMIC responded in writing denying coverage under the policy. *See* Pls.' Ex. 5. CMIC took the position that all of the alleged wrongful acts contained in the *Muller II* petition occurred prior to February 1, 2004 and, thus, were excluded from the D & O coverage.

Despite CMIC's denial of coverage, CCBC continued to defend itself against the claims asserted in *Muller II*. On June 4, 2004, due to substantial overlap between the claims asserted in *Muller I*, *Zito*, and *Muller II*, the *Muller II* court stayed that lawsuit and referred all matters to the existing arbitration proceeding. From July 12 through July 15, 2004, the parties argued their case in the arbitration proceeding. On August 1, 2004, the arbitrator resolved all of the issues presented in *Muller I*, *Zito*, and *Muller II*.

On June 9, 2005, CCBC, Pastor LeBlanc, Dr. Ramirez, Mr. Elgin, and Mr. Fraisse ("Plaintiffs") filed the present lawsuit against CMIC, seeking to recover the costs and expenses incurred in defending the claims asserted in *Muller II* and the March 29, 2004 demand letter, together with penalties for bad faith under Louisiana law. Essentially, the Plaintiffs claim that CMIC failed to satisfy its duty to defend and indemnify under the D & O policy.

On February 22, 2006, the Court resolved the parties' cross motions for summary judgment on the issue of coverage. The Court held that (1) the March 29, 2004 demand letter was not a "suit," and therefore it did not trigger CMIC's duty to defend nor indemnify, but (2)

the *Muller II* petition, which sought injunctive relief from separate and distinct "wrongful acts" that occurred after February 1, 2004, did trigger CMIC's duty to indemnify the Plaintiffs for expenses incurred in defense of *Muller II*. *See* Rec. Doc. 27.  On June 22, 2006, the Court denied both parties' motions for reconsideration.  *See* Rec. Doc. 53.  On September 13, 2006, the Court granted CMIC's motion for partial summary judgment, finding that CMIC neither misrepresented the terms of the D & O policy nor acted in bad faith in denying coverage.  *See* Rec. Doc. 71.

The sole factual issue remaining in this case relates to the allocation of attorney's fees incurred by the Plaintiffs.  The Plaintiffs contend that they are entitled to indemnity for $176,658.87 in legal expenses, which represents an amount billed by Stone Pigman Walther Wittmann L.L.C. ("Stone Pigman") on matter number 61,830 minus several charges for which indemnity is not sought, plus prejudgment interest from the date of judicial demand, and costs.  Stone Pigman opened matter number 61,830, entitled "Demand for Termination of Pastor Daniel LeBlanc," on March 31, 2004, two days after CCBC received the pre-suit demand letter of March 29, 2004 from counsel in *Muller II*.  The Plaintiffs assert that all of the attorney's fees and expenses for which recovery is sought were incurred in defense of "covered *Muller II* claims."[5]

CMIC argues that its coverage obligation is limited to those costs that are attributable to the additional post-retroactive date allegations in *Muller II* and that Stone Pigman's method of billing should not be dispositive of this case.  CMIC breaks down the fee statement for matter number 61,830 into six categories of expenses:  (1) reviewing and responding to the March 29,

---

[5] This phrase refers to the claims that this Court held in its February 22, 2006 Order and Reasons to be covered by the D & O policy.  *See* Rec. Doc. 27.

2004 demand letter; (2) defending *Muller II* in state court; (3) drafting by-laws; (4) advocacy related to the arbitration; (5) advice regarding implementation of the arbitration decision; and (6) miscellaneous unrelated work. CMIC asserts that the Plaintiffs are only entitled to indemnity for the second category, namely expenses related to defending *Muller II* in state court, to the extent that such expenses are proven at trial.

Therefore, on October 2, 2006, the case was tried to the Court without a jury to determine the amount of attorney's fees, if any, to which the Plaintiffs are entitled as indemnity. The Court, after having carefully considered the testimony of all witnesses, the exhibits entered at trial, and the record, hereby enters its findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.[6]

## II.    FINDINGS OF FACT

The only witness in this case was Mr. William Treeby, Esq., a senior partner at Stone Pigman. Mr. Treeby has represented CCBC since 2003, when *Muller I* was initially filed, and continues to represent the church in the present suit against CMIC. Mr. Treeby is therefore uniquely qualified to testify about the expenses set forth in Stone Pigman's fee statement for matter number 61,830 and for which the Plaintiffs seek indemnity.

Mr. Treeby testified at trial that the *Muller II* claims could not be properly defended without considering the previous demands made of, and claims made against, CCBC and Pastor LeBlanc. Indeed, the *Muller II* action did not exist in a vacuum, but rather was intimately related to CCBC's responses to the earlier demands and claims, including those made in *Muller I*, *Zito*,

---

[6] To the extent any finding of fact constitutes a conclusion of law, the Court hereby adopts it as such. To the extent any conclusion of law constitutes a finding of fact, the Court hereby adopts it as such.

and the pre-suit demand letter. These earlier claims and demands provide historical context for the claims made in *Muller II*.

Mr. Treeby testified that the *Muller II* claims were defended by: (1) gathering information in response to the demands set out in the pre-suit demand letter and anticipating and preparing defenses to the lawsuit it threatened, (2) ameliorating certain of the dissident church members' demands through by-law changes, (3) successfully seeking to have the *Muller II* claims committed to a Christian arbitration, (4) defending the *Muller II* claims, on the merits, in the arbitration, and (5) assisting and advising the Plaintiffs in regard to the implementation of the arbitrator's decision. The Court finds that the expenses set forth in the fee statement for matter number 61,830 represent these various actions.

Thus, regardless of which party may have borne the burden of allocation in this case, the Court finds that the Plaintiffs have demonstrated that the charges billed for matter number 61,830 were incurred in defense of "covered *Muller II* claims." For example, the work done in reviewing and responding to the threats of the pre-suit demand letter amounted to preparation of the defense against the claims that were ultimately asserted in *Muller II*. In addition, Stone Pigman's advice and work on the church's by-laws are related to the defense of the corporate governance claims asserted in *Muller II*. Moreover, the mere fact that the *Muller II* claims were referred to arbitration does not absolve CMIC of its duty to indemnify.

While CMIC may theoretically have been able to show that some of these charges were unrelated to the defense of *Muller II*, it has failed to do so in this case. CMIC called no witnesses at trial to rebut Mr. Treeby's testimony and its cross-examination of Mr. Treeby failed to demonstrate that any of the charges billed for matter number 61,830 should be carved out as

unrelated to the defense of *Muller II*.

## III. CONCLUSIONS OF LAW

The Court has previously interpreted the insurance contract in this case, and finds no reason to depart from its prior legal conclusion that CMIC owed CCBC a duty to indemnify:

> Under the D & O policy, CMIC's duty to defend only arises when there is a suit seeking payment for "loss." The operative word being "payment." In *Muller II*, the plaintiffs were not seeking payment for loss. They were purely seeking injunctive relief. Although this injunctive relief may have caused CCBC to suffer collateral loss in the form of compliance fees and attorney's fees, the duty to defend did not arise because the payment for loss must be the relief specifically sought in the litigation, not a by-product thereof.
>
> On the other hand, CMIC's duty to indemnify CCBC arises whenever CCBC becomes obligated to pay for loss. There is a significant difference in the policy language concerning CMIC's duty to defend and duty to indemnify. The duty to defend requires a suit seeking payment for loss. The duty to indemnify only requires the legal obligation to pay for loss. In hiring attorneys to defend itself, CCBC did become legally obligated to pay for loss ("defense expenses") which arose from injuries arising from post-February 1, 2004 wrongful acts. As such, CMIC does have a duty to indemnify CCBC.
>
> The Court acknowledges that there is some ambiguity in the relationship between sections A(1)(a) and (c) and section A(1)(d) [of the contract]. Normally, the duty to indemnify section would cover instances in which an insurer is obligated to defend the insured itself or, as in this case, to pay for the litigation expenses. It is an odd situation when an insurer has no duty to defend the insured itself, but must indemnify the insured for expenses paid to independent attorneys hired to defend the insured. This is a situation where the insurer must pay someone else to do what it has no obligation to do itself. Notwithstanding this result, the Court finds that the language of the D & O policy is ambiguous and, thus, must be construed in favor of the insured. As such, although an odd result may occur, it is a result mandated by law. *See Church Mutual Ins. Co. v. The Executive Bd. of the Missouri Baptist Convention*, No. 03-4224, 2005 WL 1532948, at *7-10 (W.D. Mo. June 24, 2005) (interpreting a similar insurance policy and finding that insurer's duty to defend/indemnify did arise).

*See* Rec. Doc. 71 at 13-14. Having found that the charges billed for matter number 61,830 were incurred in defense of "covered *Muller II* claims," CMIC must indemnify the Plaintiffs for these expenses.

## IV.     CONCLUSION

For the foregoing reasons, Judgment will be entered in favor of the Plaintiffs and against the Defendant, CMIC, in the amount of One Hundred Seventy-Six Thousand, Six Hundred Fifty-Eight and 87/100 ($176,658.87) Dollars, with interest thereon at the rate of seven percent (7%) per annum, from June 9, 2005, until paid in full, plus costs of this suit.

New Orleans, Louisiana, this __8th__ day of __November__, 2006.

_____
UNITED STATES DISTRICT JUDGE